NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

LYNDA TOMAINI,

        Plaintiff,

        v.

VELOCITY INVESTMENTS, LLC and
RAGAN & RAGAN, P.C.

        Defendants.

Civil Action No. 15-02038-BRM-LHG

OPINION

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Velocity Investments, LLC ("Velocity") and Ragan & Ragan, P.C.'s ("Ragan & Ragan," together with Velocity, "Defendants") Motion for Summary Judgment. (ECF No 64.) Plaintiff Lynda Tomaini ("Tomaini") opposes the Motion. (ECF No. 74.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion for Summary Judgment is **DENIED**.

**I.  BACKGROUND**

On August 25, 2009, Velocity obtained a judgment against Payam Fathi ("Fathi") in the Superior Court of New Jersey in the amount of $15,000. (Def. Statement of Facts (ECF No. 64-16) ¶ 1 and Pls. Response to Statement of Facts (ECF No. 74-4) ¶ 1.) The judgment, along with interest and costs remains outstanding and unpaid by Fathi. (ECF No. 64-16 ¶ 2 and ECF No. 74-4 ¶ 2.) On March 19, 2010, Velocity's counsel, Ragan & Ragan, served an Information Subpoena and attached questions to determine Fathi's assets. (ECF No. 64-16 ¶ 3 and ECF No. 74-4 ¶ 3.) On

1

August 25, 2010, Fathi replied to a notice from Ragan & Ragan regarding a hearing on the judgment matter contending, "I do not own a home." (ECF No. 64-16 ¶ 5 and ECF No. 74-4 ¶ 5.)

On June 13, 2013, Ragan & Ragan conducted an asset search of Fathi, but did not find any substantive assets from which the judgment could be satisfied. (ECF No. 64-16 ¶ 7 and ECF No. 74-4 ¶ 7.) Eventually, Ragan & Ragan argues it decided to take the time to investigate into whether Fathi had any ownership interest in his residence on 85 Berry Place, Long Branch, New Jersey ("85 Berry Place"). (ECF No. 64-16 ¶ 13.) Ragan & Ragan alleges that on March 7, 2014, it saw, for the first time, that the property wherein Fathi resided, 85 Berry Place, was originally deeded to Fathi, in consideration of $190,000, by deed dated November 1, 2001. (*Id.*; ECF No. 64-12.) That deed was later transferred on March 3, 2005, to Tomaini and recorded on March 29, 2005, in consideration of $1.00. (ECF No. 65-16 ¶ 14 and ECF No. 64-14.)

Plaintiffs contend an employee of Ragan & Ragan, Daniel, was well-aware of the 2005 transfer in the summer of 2010, when he engaged in collection calls against Fathi. (ECF No. 74-3 ¶ 74.) Fathi alleges he explained to Daniel in 2010 "that [he] did not [own real estate], which was true because [he] had conveyed [his] remaining 50% interest in the property to [Tomaini] back in 2005." (*Id.*)

Nevertheless, the parties agree that in 2001, Tomaini was interested in purchasing 85 Berry Place, however, the property was purchased in Fathi's name. (ECF No. 74-5 ¶ 3 and ECF No. 77-1 ¶ 3.)[1] In March 2002, immediately after purchasing 85 Berry Place, Fathi conveyed a 50% interest to Tomaini. (ECF No. 77-1 ¶ 4.) In 2005, Fathi conveyed his remaining 50% interest to Tomaini. (ECF No. 77-1 ¶ 6.) "Although Tomaini purchased her home in Fathi's name, both

---

[1] Tomaini alleges she did not qualify for a mortgage so she had to purchase the property in Fathi's name. (*Id.*)

2

parties considered the property as rightfully belonging to Tomaini. Tomaini paid all of the purchase and carrying costs since 2011 for the property and continues to do so to the present time." (*Id.* ¶ 7.) Tomaini made the initial down payment when the property was purchased in 2001, made all mortgage payments between 2001 and 2005, and continues to make all mortgage payments. (*Id.* ¶ 8.)

On March 21, 2014, Ragan & Ragan, filed a fraudulent conveyance action, under the Fraudulent Transfer Act, in the Superior Court of Monmouth County (the "State Court Action") against Fathi and Tomaini, thirteen years after the initial 2001 transfer from Fathi to Tomaini and nine years after the 2005 deed from Fathi to Tomaini. (ECF No. 74-5 ¶ 14.) On June 30, 2014, a Superior Court Judge held a case management conference, where Velocity represented that the basis for the fraudulent transfer was lack of consideration. (ECF No. 74-13 at 4:22-5:4.) On December 3, 2014, Tomaini filed a Motion to Dismiss Velocity's complaint with prejudice on the grounds that the Complaint violated the statute of limitations. (ECF No. 4 ¶ 9; ECF No. 74 at 4.) On December 19, 2014, the Superior Court granted Tomaini's unopposed motion and dismissed Velocity's complaint with prejudice. (ECF No. 74 at 4.)

On March 20, 2015, Tomaini filed a Complaint in this Court. (ECF No. 1.) On July 16, 2015, she filed an Amended Complaint alleging Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by filing a fraudulent conveyance action in State Court on March 21, 2014 against her. (ECF No. 4.) On November 2, 2015, Defendants filed a Motion to Dismiss, arguing the Amended Complaint was barred by the Entire Controversy Doctrine, the statute of limitations, lack of standing, and for failure to state a claim under the FDCPA. (ECF No. 9-1.) On May 26, 2016, the Honorable Peter G. Sheridan, U.S.D.J., denied Defendants' Motion to Dismiss.

(ECF No. 38.) On December 22, 2017, Defendants field a Motion for Summary Judgment. (ECF No. 64.) Tomaini opposes the Motion. (ECF No. 74.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the

burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**III. DECISION**

**A. Statute of Limitations**

The principal issue before this Court is whether Defendants violated the FDCPA by filing a fraudulent conveyance action in State Court on March 21, 2014, against Tomaini and Fathi. The Third Circuit has determined that the filing of a collection action beyond the statute of limitations is a violation of the FDCPA. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (holding "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts"); *Judah v. Total Card, Inc.*, No. 16-5881, 2017 WL 2345636, at *3 (D.N.J. May 30, 2017) (acknowledging the Third Circuit has determined "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts").

Defendants argue they filed the underlying fraudulent transfer State Court Action within the applicable statute of limitations. (ECF No. 64 at 2.) Tomaini argues there is overwhelming evidence that Defendants filed the underlying State Court Action beyond the statute of limitations. (ECF No. 74 at 5-10.) Tomaini further contends the prior ruling of the underlying State Court Action regarding the statute of limitations issue constitutes claim preclusion and Defendants cannot relitigate whether their fraudulent transfer claim was barred by the statute of limitations. (ECF No. 82 at 2-3.)

Notwithstanding whether this Court can overcome *res judicata*,[2] there are material issues of fact as to whether Defendants' underlying fraudulent transfer State Court Action was filed

---

[2] Tomaini raises claim preclusion for the first time in her sur-reply. However, "[a] party may not raise new arguments in their reply brief." *Bernstein v. City of Atl. City*, No. 08-CV-3796, 2011 WL

6

beyond the statute of limitations. There are several different statutes of limitations under the Fraudulent Transfer Act that correspond to different theories of recovery, only two of which are relevant to this matter—lack of consideration and the discovery rule. If the theory of recovery is "lack of consideration," than the applicable statute of limitations is four years "after the transfer was made or the obligation was incurred." N.J. Stat. Ann. § 25:2-31(b); N.J. Stat. Ann. § 25:2-25(b). However, if the theory of recovery is the discovery rule, then the applicable statute of limitations is "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." N.J. Stat. Ann. § 25:2-31.

Tomaini argues the "the applicable statute of limitations clearly is four (4) years" because Ragan & Ragan by their own representation to the State Court stated that his theory of recovery was lack of consideration and admitted that other theories of recovery "remained to be seen." (ECF No. 74 at 5-6.) Defendants acknowledge they fall outside the four-year statute of limitations but contend the discovery rule applies to this matter. (*See* ECF No. 77.)

Contrary to Tomaini's argument, it is clear Defendants' theory of recovery in the State Court Action was based on the discovery rule. While it is true that on June 30, 2014, the Superior

---

2559369, at *3 (D.N.J. June 27, 2011) (citing *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001)); *YSM Realty, Inc. v. Grossbard*, No. 10–5987, 2011 WL 735717, at * 3 n.3 (D.N.J. Feb. 23, 2011) ("The Court will not entertain arguments not raised in Defendants' initial brief"); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 630 n.9 (D.N.J. 2010) (holding similarly). The purpose of a reply brief is to "respond[] to the opposition brief and explain[] a position that the respondent has refuted." *Halprin v. Verizon Wireless Serv., LLC*, No. 07–4015, 2008 WL 961239, at * 8 (D.N.J. April 8, 2008); *see Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998) ("It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted."). The same underlying principles "also apply to sur-reply briefs." *Smithkline Beecham PLC v. Teva Pharm. USA, Inc.*, No. 04-0215, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007). Accordingly, the Court will not consider Tomaini's claim preclusion argument.

Court Judge held a case management conference where Defendants represented that the basis for the fraudulent transfer was lack of consideration, Defendants meant that "lack of consideration" was one of the badges of fraud. (ECF No. 74-13 at 4:22-5:4.) This is evidenced by Defendants' response to the Superior Court Judge's question of whether "lack of consideration" was "one of the badges of fraud," and Defendants answered, "Well, of course, but I haven't been able to get any discovery, so the other badges of fraud remain to be seen." (*Id.* at 5:5-10.) The badges of fraud are considered in determining whether the discovery rule applies. N.J. Stat. Ann. § 25:2–26.

Moreover, Defendants' complaint in the underlying State Court Action clearly demonstrates Defendants filed a cause of action under the discovery rule. The complaint states, "The Defendant's transfer of the [property in question] was made with the actual intent to hinder, delay or defraud the Plaintiff as a creditor of the Defendant Payam Fathi and prevent the Plaintiff form the collection of the monies due it from the Defendant." (ECF No. 64-15 ¶ 7.)

Because Defendants acknowledge the claims fall outside the four-year statute of limitations and the State Court Action complaint clearly demonstrates Defendants attempted to file a cause of action under the discovery rule, the Court will only analyze whether the discovery rule applies to the Defendants' claims in the State Court Action. Consequently, the Court finds there is an issue of fact as to whether Defendants' claims fall within the discovery rule and does not reach the question of whether the State Court Action was timely filed.

New Jersey Statute § 25:2–25 defines the different theories of fraudulent conveyance as:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J. Stat. Ann. § 25:2–25. In ascertaining whether the discovery rule applies to a fraudulent conveyance, there are two relevant inquiries. The first is "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them" at some point in time "but for the conveyance." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 488 (N.J. 1999) (citations omitted).

The second inquiry "is whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." *Id.*; N.J. Stat. Ann. § 25:2-31(a); N.J. Stat. Ann. § 25:2-25(a). "Both inquiries involve fact-specific determinations that must be resolved on a case-by-case basis. The person seeking to set aside the conveyance bears the burden of proving actual intent." *Gilchinsky*, 732 A.2d at 488. In determining whether the transferor intended to defraud, delay, or hinder the creditor, courts look to "badges of fraud." *Id.* New Jersey Statute § 25:2–26 lists the "badges of fraud" and provides:

> In determining actual intent under subsection a. of R.S. 25:2–25 consideration may be given, among other factors, to whether:
>
> a. The transfer or obligation was to an insider;
> b. The debtor retained possession or control of the property transferred after the transfer;
> c. The transfer or obligation was disclosed or concealed;
> d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> e. The transfer was of substantially all the debtor's assets;
> f. The debtor absconded;

9

> g. The debtor removed or concealed assets;
> h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Balancing the factors enumerated above, "[t]he proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *Gilchinsky*, 732 A.2d at 489-90. "Although the presence of a single factor . . . may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* at 490. "In some cases, the presence of a single factor may suffice." *Firmani v. Firmani*, 752 A.2d 854, 857 (N.J. Super. Ct. App. Div. 2000). However, a strong inference of fraud arises where several badges of fraud accompany one transaction, "[u]nless a sufficient explanation is supplied, clearly rebutting the inference of actual fraudulent intent, the conclusion that the debtor possessed the requisite intent is inescapable." *Id.* (citations omitted).

Even assuming Fathi's conveyance of 85 Berry Place manifested four of the eleven badges of fraud Defendants allege it does, which the Court does not find it does, Tomaini has provided a sufficient explanation rebutting the inference of actual fraudulent intent to create a genuine issue of fact at this time. Defendants allege the transfer obligation was to an insider because it was between co-habitants; the value of consideration received by the debtor was not reasonably equivalent to the value of the asset transferred because it was only $1.00; Fathi continued in possession and control of the property; and transferor conducted business with impunity after the transfer by incurring a judgment without being able to pay. (ECF No. 77 at 6-7.)

Here, the parties agree that in 2001, Tomaini was interested in purchasing 85 Berry Place, however, the property was purchased in Fathi's name. (ECF No. 74-5 ¶ 3 and ECF No. 77-1 ¶ 3.) In 2005, Fathi conveyed his remaining 50% interest to Tomaini. (ECF No. 77-1 ¶ 6.) The parties further concede that, "[a]lthough Tomaini purchased her home in Fathi's name, both parties considered the property as rightfully belonging to Tomaini. Tomaini paid all of the purchase and carrying costs since 2011 for the property and continues to do so to the present time." (*Id.* ¶ 7.) Lastly, Tomaini made the initial down payment when the property was purchased in 2001, made all mortgage payments between 2001 and 2005, and continues to make all mortgage payments. (*Id.* ¶ 8.) As such, Tomaini has provided sufficient evidence "clearly rebutting the inference of actual fraudulent intent, the conclusion that the debtor possessed the requisite intent is inescapable." *Firmani*, 752 A.2d at 857. Because the discovery rule applies only if the facts demonstrate "actual intent to hinder, delay, or defraud any creditor of the debtor," and there is an issue of fact as to whether intent is present, Defendants' Motion for Summary Judgment is **DENIED** as to this issue.

### B. Underlying Consumer Debt

Defendants argue Tomaini cannot sustain a FDCPA claim because she cannot establish an underlying consumer debt. (ECF No. 64 at 3.) Tomaini argues "[i]t is undisputed that Velocity obtained a civil judgment against Fathi, in the approximate amount of $15,000.00, based upon a Citibank credit card account used by Fathi that Velocity had purchased." (ECF No. 74 at 10.)

"[T]he FDCPA applies to only consumer debt for personal, family or household purposes and not to commercial debt." *Affinity Fed. Credit Union v. Allstar Contracting, LLC*, No. 11–2423, 2011 WL 6020588 (D.N.J. Dec. 1, 2011) (citing *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168–69 (3d Cir. 1987)).

Here, Fathi and Tomaini certify that the Citibank credit card was "strictly for personal and family purchases, <u>not</u> for business purposes." (ECF No. 74-3 ¶ 4 and ECF No.74-2 ¶ 25.) Fathi also contends he "used the Citibank credit card to purchase food, dinner at restaurants, gas for [his] car, and many other personal, family and household purchases, but never for business purposes." (ECF No. 74-3 ¶ 5.) Lastly, Tomaini declares she paid for all the Italian novelty store business expenses through the business checking account and/or business debt card. (ECF No. 74-2 ¶ 26.) Therefore, at a minimum, Tomaini has established a genuine issue of fact exists as to whether the Citibank credit card debt constituted "consumer debt" under the FDCPA, and Defendants' Motion for Summary Judgment is **DENIED** as to this issue.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 64) is **DENIED**.

**Date:** July 31, 2018                   */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**